IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 2:99-CR-0652J |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | **& ORDER** |
| | ) | |
| JOSE YAIR GOMEZ-DIAZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<table>
<tr><td>
<b>FILED</b><br>
CLERK, U.S. DISTRICT COURT<br>
January 18, 2006 (2:57pm)<br>
DISTRICT OF UTAH
</td></tr>
</table>

\* \* \* \* \* \* \* \* \*

The defendant, Jose Yair Gomez-Diaz, is currently in state custody in Nevada, incarcerated for a term of twenty-five years and eligible for parole after the first ten years—all apart from the sentence imposed upon him in the above-captioned proceeding.

The United States has filed a detainer with Nevada based upon application and warrant issued.  (A copy of each is annexed.)

One special condition of supervised release set forth in the judgment and commitment entered against the defendant in the above-captioned proceeding is that if "deported," the defendant was not to return to the United States without authorization. (*See* Judgment in a Criminal Case, filed August 4, 2000 (dkt. no. 145), at 2.)

The question of the alleged violation of that condition of supervised release has not yet been before this court for hearing.

The defendant's August 26, 2005 motion to modify his sentence pursuant to Fed.

R. Crim. P. 32.1(c) was denied as premature, and awaits an appropriate hearing on the grounds for revocation asserted by the United States, once the warrant is served and defendant is returned to federal custody under Fed. R. Crim. P. 32.1(a).  If supervised release is revoked following a hearing under Fed. R. Crim. P. 32.1(b) and 18 U.S.C.A. § 3583(e)(3) (2000), the question raised by the defendant's motion, *viz.*, whether the thirty-six month term of supervised release imposed as part of his federal sentence should be amended to run concurrently with his state sentence, would be rendered moot.

Nothing in the language of Fed. R. Civ. P. 32.1 or 18 U.S.C.A. §§ 3582, 3583 (2000)—the authorities cited by defendant's motion—provides for the specific relief that the defendant seeks.  Moreover, Title 18, United States Code, § 3601 requires that "[a] person who has been . . . placed on supervised release pursuant to the provisions of section 3583, *shall, during the term imposed, be supervised by a probation officer* to the degree warranted by the conditions specified by the sentencing court."  18 U.S.C.A. § 3601 (2000) (emphasis added).  A person who is incarcerated in a state facility is not in federal custody,  has not been "placed on a term of supervised release after imprisonment," 18 U.S.C.A. § 3583(a), and cannot be supervised by a federal probation officer in the fashion contemplated by the federal sentencing statutes.

A term of supervised release imposed a part of a federal criminal sentence is not a term of imprisonment that may run concurrently with or consecutively to other terms of

imprisonment under 18 U.S.C.A. § 3584(a).[1]   It is much more akin to a term of

probation,[2] which cannot run concurrently with a sentence of imprisonment:

> **(b)  Concurrence With Other Sentences.**— Multiple terms of probation,
> whether imposed at the same time or at different times, run concurrently
> with each other. A term of probation runs concurrently with any Federal,
> State, or local term of probation, supervised release, or parole for another
> offense to which the defendant is subject or becomes subject during the
> term of probation. *A term of probation does not run while the defendant is
> imprisoned in connection with a conviction for a Federal, State, or local
> crime unless the imprisonment is for a period of less than thirty consecutive
> days.*

18 U.S.C.A. § 3564(b) (2000) (emphasis added).  The defendant does not cite to any case

law or other legal authority suggesting that an offender may be placed on federal

supervised release while incarcerated in a state facility, and this court has found none.[3]

Thus, even apart from the question of timing, the court denied the defendant's

"Motion for Modification of Supervised Release" because it lacks the authority under

Fed. R. Crim. P. 32.1, 18 U.S.C.A. §§ 3582 or 3583 to grant the specific relief requested

---

[1]18 U.S.C.A. § 3584(a) (2000) reads:

> **(a)  Imposition of Concurrent or Consecutive Terms.**— If multiple terms of imprisonment
> are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a
> defendant who is already subject to an undischarged term of imprisonment, the terms may run
> concurrently or consecutively, except that the terms may not run consecutively for an attempt
> and for another offense that was the sole objective of the attempt.  Multiple terms of
> imprisonment imposed at the same time run concurrently unless the court orders or the statute
> mandates that the terms are to run consecutively.  Multiple terms of imprisonment imposed at
> different times run consecutively unless the court orders that the terms are to run concurrently.

[2]"The implementation of a sentence of imprisonment" that "includes a term of supervised release" is
governed "by the provisions of subchapter A of chapter 229" of Title 18, which deals with probation.  *See* 18
U.S.C.A. §§ 3601-3608 (2000).

[3]If contrary legal authority exists, and the above analysis is manifestly in error, the defendant may bring
such error to the court's attention by motion for reconsideration.

by the defendant.

The defendant filed a notice of appeal from this court's September 20, 2005 Order denying his motion.  By an Order filed October 31, 2005, the court of appeals partially remanded the matter for further consideration of matters bearing upon the timeliness of defendant's appeal.

The question on remand is whether the "Defendant's failure to comply with the filing requirements of Rule 4(b)(1)(A)(i) was based on excusable neglect or good cause." (Order, filed October 31, 2005, *United States of America v. Jose Yair Gomez-Diaz*, Case No. 05-4275 (10th Cir.).)  *See* Fed. R. App. P. 4(b)(4).[4]

On November 17, 2005, defendant Gomez-Diaz filed a document entitled "Judicial Notice" (dkt. no. 208), with an accompanying Affidavit in which he details the sequence of events leading to the filing of his notice of appeal by mail on October 5, 2005—one day after the ten-day period for appealing from this court's September 20, 2005 Order (dkt. no. 205) denying his Motion for Modification of Supervised Release (dkt. no. 203), had expired.  Having received a copy of the September 20th Order on September 23, Gomez-Diaz promptly requested access to the Lovelock Correctional Center law library. He was not granted access to the law library until October 3, at which time he drafted his

---

[4]Fed. R. App. P. 4(b)(4) reads:

**(4) Motion for Extension of Time.** Upon a finding of excusable neglect or good cause, the district court may —before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

-4-

notice of appeal and requested five photocopies, which were provided to him on October

5—the date on which he mailed his notice to the court and counsel, and the date on which

the court of appeals deemed his notice to be filed.  *See* Fed. R. App. P. 4(c)(1).

 As noted above, if this court finds "excusable neglect or good cause" under Fed.

R.App. P. 4(b)(4), it may extend the time to file a notice of appeal up to thirty days after

expiration of the original deadline.

> In making this determination, a court must "tak[e] account of all relevant
> circumstances surrounding the party's omission." *Pioneer Investment Servs.*
> *v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123
> L.Ed.2d 74 (1993) (bankruptcy context); see also *United States v. Torres*,
> 372 F.3d 1159, 1160, 2004 WL 1345104, *3 (10th Cir. 2004) (applying
> *Pioneer Investment Services* in Rule 4(b) context).  The four factors to be
> considered are: (1) the danger of unfair prejudice to the nonmoving party;
> (2) the length of the delay and its potential impact on judicial proceedings;
> (3) the reason for the delay, including whether it was within the reasonable
> control of the movant; and (4) whether the movant acted in good faith.  *Id.*
> at 979.

*United States v. Vogl*, 374 F.3d 976, 981 (10th Cir. 2004).  "The time for taking an appeal

should not be extended in the 'absence of circumstances that are unique and

extraordinary.'"  *Bishop v. Corsentino*,  371 F.3d 1203, 1206-1207 (10th Cir. 2004)

(quoting *Gooch v. Skelly Oil Co.*, 493 F.2d 366, 370 (10th Cir. 1974) (internal quotation

omitted)).  And "excusable neglect" and "good cause" are complementary rather than

overlapping standards:

>  The concept of good cause "take[s] account of a narrow class of
> cases in which a traditional 'excusable neglect' analysis would be
> inapposite." *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 630 (1st Cir. 2000).
> Good cause comes into play "in situations in which there is no

fault—excusable or otherwise.  In such situations, the need for an extension
is usually occasioned by something that is not within the control of the
movant."  Fed. R.App. P. 4(a)(5) advisory committee's note (2002
Amendments)."

*Bishop*, 371 F.3d at 1207.  *See also Lorenzen v. Employees Ret. Plan of Sperry &*
*Hutchinson Co.*, 896 F.2d 228, 232 (7th Cir. 1990) ("the standards of excusable neglect

and of good cause will rarely if ever have to be compared, because they have different

domains"); *Pontarelli v. Stone*, 930 F.2d 104, 111 (1st Cir. 1991) (no authority found "for

interpreting Rule 4(a)(5) as authorizing overlapping analyses under the 'good cause' and

'excusable neglect' standards").  "Where the need for an extension of time to file a notice

of appeal results entirely from neglect attributable to the would-be appellant, as

distingushed from forces beyond her control," Rule 4 "requires a showing of 'excusable

neglect.'"  *Pontarelli*, 930 F.2d at 111.

In the context of this proceeding, the defendant's one-day delay in mailing his

notice appears to pose minimal danger of unfair prejudice to the Government as the "non-

moving party"; the length of the delay is the briefest possible; and it appears that the

defendant has acted in good faith in attempting to comply with the ten-day time limit

under Fed. R. App. P. 4(b)(1)(A)(i).  On their face at least, the proffered reasons for the

delay relate to the timing of the defendant's access to prison law library facilities and

photocopy services, neither of which were within the defendant's control beyond his

making of timely requests for the same.  Yet upon closer examination, the delay in filing

the notice of appeal in this instance was a matter within the defendant's control from and

after his preparation of the notice on October 3rd, so the "excusable neglect" standard would apply.

According to defendant Gomez-Diaz' Affidavit, he prepared his notice of appeal on October 3, 2005, one day *before* the Rule 4(b)(1)(A)(i) time limit expired.  (Affidavit of Defendant, dated November 11, 2005 (dkt. no. 208), at 2 ¶ 6.)  He recounts that he "submitted the Notice of Appeal" to a law librarian, "requesting photocopies for the purpose of complying with the Federal Rules of Civil Procedure regarding service of pleadings upon Respondents."  (*Id.* at 2 ¶ 7.)  He received the copies on October 5, and mailed his notice "to all interested parties."  (*Id.* at 2 ¶¶ 8-9.)

Service of papers on an appeal is governed by the Federal Rules of Appellate Procedure.  Fed. R. App. P. 25(b) reads:

> **(b) Service of All Papers Required.**  Unless a rule requires service by the clerk, a party must, at or before the time of filing a paper, serve a copy on the other parties to the appeal or review.  Service on a party represented by counsel must be made on the party's counsel.

But Fed. R. App. P. 3(d) reads in pertinent part:

> **(d) Serving the Notice of Appeal.**  (1) The *district clerk must serve notice of the filing of a notice of appeal* by mailing a copy to each party's counsel of record -- excluding the appellant's -- or, if a party is proceeding pro se, to the party's last known address.  When a defendant in a criminal case appeals, the clerk must also serve a copy of the notice of appeal on the defendant, either by personal service or by mail addressed to the defendant. The clerk must promptly send a copy of the notice of appeal and of the docket entries -- and any later docket entries -- to the clerk of the court of appeals named in the notice. The district clerk must note, on each copy, the date when the notice of appeal was filed.

(2) If an inmate confined in an institution files a notice of appeal in the manner provided by Rule 4(c), the district clerk must also note the date when the clerk docketed the notice.

Fed. R. App. P. 3(d) (1), (2) (emphasis added).  Thus, in contrast to the service requirements generally applicable under the Federal Rules of Civil Procedure,[5] Fed. R. App. P. 3(d)(1) requires the *clerk of the court* to serve notice of the filing of the defendant's notice of appeal, excepting that notice from the service requirements imposed upon parties by Fed. R. App. P. 25(b).  "The clerk, not the defendant, serves the notice." David G. Knibb, *Federal Court of Appeals Manual* § 15.1(f), at 275 (4th ed. 2000) (footnote omitted).

The appellate rules did not require defendant Gomez-Diaz to serve copies of his notice of appeal upon counsel for the Government or upon the court of appeals within the time prescribed by Fed. R. App. P. 4(b)(1)(A)(i).  Rule 3(a)(1) requires the defendant to file his notice "with the district clerk within the time allowed by Rule 4," which he could have accomplished pursuant to Fed. R. App. P. 4(c)(1) by mailing his notice to the clerk through the prison mail system on October 3rd.[6]

---

[5] *See* Fed. R. Civ. P. 5(a).  The Federal Rules of Civil Procedure find no application to an appeal in a criminal case such as this one.  *See* Fed. R. Civ. P. 81.

[6] It is true that Fed. R. App. P. 3(a)(1) requires that "[a]t the time of filing, the appellant must furnish the clerk with enough copies of the notice to enable the clerk to comply with Rule 3(d)," but Rule 3(a)(2) provides that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal."  Defendant Gomez-Diaz did not furnish additional copies of his notice to the clerk of this court in compliance with Rule 3(a)(1), and does not point to Rule 3(a)(1)'s requirement as the reason for his delay in mailing his notice until October 5th.

As the Supreme Court explained in *Pioneer Investment Services v. Brunswick Assocs., Ltd. Partnership*, 507 U.S. 380 (1993), although "excusable neglect" is not strictly limited to omissions caused by circumstances beyond the movant's control, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect."  507 U.S. at 392.

Was Gomez-Diaz' failure to file his notice of appeal by October 4th the result of excusable neglect?

The answer is no.

Therefore,

**IT IS ORDERED** that an extension of time pursuant to Fed. R. App. P. 4(b)(4) within which to file the defendant's notice of appeal is hereby DENIED.

Pursuant to the court of appeals' Order filed October 31, 2005, the Clerk of this court shall forthwith transmit copies of this Order and its attachments and the defendant's "Judicial Notice" and Affidavit of Defendant (dkt. no. 208) to the Clerk of the United States Court of Appeals for the Tenth Circuit.

DATED this *18* day of January, 2006.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

-9-